UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SHAUN YOUNG,

      Plaintiff,

    -against-

ERIC CABRERA, SHAWN JOHNSTON,
KEITH DI PRESSO, NEIL CASEY, JOHN
DOE 1, JOHN DOE 2, and THE CITY OF
NEW YORK,

      Defendants.

-------------------------------------------------------x

        **MEMORANDUM AND ORDER**
         18-cv-3028 (RPK) (ST)

RACHEL P. KOVNER, United States District Judge:

   Plaintiff Shaun Young brings an action under 42 U.S.C. § 1983 against Officers Keith DiPresso, Shawn Johnston, and Eric Cabrera of the New York Police Department ("NYPD").  He also sues Sergeant Neil Casey, two unnamed police officers, and the City of New York.  Mr. Young alleges that defendants violated his constitutional rights by using excessive force and fabricating evidence.  He further alleges that the City of New York is liable for these constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Defendants have moved for summary judgment on all claims.

   Defendants' motion for summary judgment is granted in part and denied in part.  I grant summary judgment to defendants on the excessive force claim with respect to allegations that Officers Dipresso, Johnston, and Cabrera threw Mr. Young to the ground.  But I deny summary judgment with respect to allegations that Officers DiPresso, Johnston, and Cabrera kicked and stomped Mr. Young before and after he was handcuffed.  I also deny summary judgment to Sergeant Casey with respect to allegations that he failed to intervene.

1

Further, I grant summary judgment to defendants on the claim that defendants fabricated evidence as well as the claim that the City is liable here.  Finally, I grant summary judgment to defendants on any claims relating to unnamed officers.  Accordingly, the Clerk of Court is directed to dismiss the City of New York and any unnamed officers.

## BACKGROUND

### A.    Factual Background

On this the parties agree: At approximately 12:40 a.m. on May 23, 2015, Roland Chateau was robbed of four dollars at knifepoint in front of a store in Rockaway Beach, Queens.  *See* Defs.' Local Civil Rule 56.1 Statement of Facts ¶ 1 (Dkt. #42) ("Defs.' Statement"); Pl.'s Local Rule 56.1 Counter Statement of Facts ¶ 1 (Dkt. #48) ("Pl.'s Statement"); Decl. of Angharad K. Wilson Ex. B. at 2 (Dkt. #43-2) ("Complaint Report").  Mr. Chateau called 911, and when two officers drove up, he told them what happened: A man had threatened him with a knife, taken several dollars, and then fled toward a nearby housing complex.  *See* Defs.' Statement ¶¶ 2, 4; Pl.'s Statement ¶¶ 2, 4; Wilson Decl. Ex. D ¶¶ 4-6 ("DiPresso Decl.").

Mr. Chateau accompanied the officers to the housing complex.  *See* Defs.' Statement ¶ 6; Pl.'s Statement ¶ 6; DiPresso Decl. ¶¶ 8-9; Wilson Decl. Ex. E ¶¶ 8, 10 ("Johnston Decl.").  There, from the back seat of the police car, he identified Shaun Young as the man who had robbed him.  *See* Defs.' Statement ¶ 8; Pl.'s Statement ¶ 8; DiPresso Decl. ¶ 10; Johnston Decl. ¶ 11.  The officers exited, joining two more officers who had since arrived.  *See* Defs.' Statement ¶¶ 10-11; DiPresso Decl. ¶ 11; Johnston Decl. ¶ 12.  Soon after, officers Keith DiPresso, Shawn Johnston, and Eric Cabrera approached Mr. Young, along with a supervising officer, Sergeant Neil Casey.  *See* Defs.' Statement ¶ 11; DiPresso Decl. ¶¶ 12-13; Johnston Decl. ¶ 13.

From there, the parties' accounts diverge.  As the officers tell it, when they approached Mr. Young, they identified themselves as police officers.  *See* DiPresso Decl. ¶ 14; Johnston Decl.

¶ 14.  They then told Mr. Young that he had been identified as the perpetrator of a robbery, *see* Defs.' Statement ¶ 11, and told him to put his hands behind his back, *see id.* ¶ 12; DiPresso Decl. ¶ 14; Johnston Decl. ¶ 13, but Mr. Young refused, *see* Defs.' Statement ¶ 12; DiPresso Decl. ¶ 14; Johnston Decl. ¶ 14.

Because Mr. Young would not be handcuffed, Officers DiPresso and Johnston grabbed his arms.  *See* Defs.' Statement ¶ 13; DiPresso Decl. ¶14; Johnston Decl. ¶ 14.  As Mr. Young struggled to break free, Officers DiPresso, Johnston, and Cabrera wrestled him to the ground.  *See* Defs.' Statement ¶ 14; DiPresso Decl. ¶ 16; Johnston Decl. ¶¶ 15-16.  Mr. Young kept moving his arms and kicking his legs, *see* Defs.' Statement ¶ 16; DiPresso Decl. ¶ 16; Johnston Decl. ¶ 16, but once Officer Cabrera held down his legs, Officers DiPresso and Johnston were able to handcuff him, *see* Defs.' Statement ¶ 17; DiPresso Decl. ¶ 17; Johnston Decl. ¶ 17.  At that point, Mr. Young stopped resisting.  *See* DiPresso Decl. ¶ 17; Johnston Decl. ¶ 17.  The officers then retrieved a folding knife and four dollars from his pocket.  *See* Defs.' Statement ¶¶ 20-21; Pl.'s Statement ¶ 20; DiPresso Decl. ¶ 20; Complaint Report at D00005-8.  The officers denied ever kicking or stomping Mr. Young.  *See* Defs.' Statement ¶¶ 18-19; DiPresso Decl. ¶ 19; Johnston Decl. ¶ 18.

Mr. Young gives a different account.  As he tells it, the officers did identify themselves, *see* Shaun Young Dep. 90:13-15 (Dkt. #46-3) ("Young Dep."), and they did tell him that someone had identified him as the perpetrator of a robbery, *see* Young Dep. 87:11-14.  But when he told them he did not commit the robbery, *see ibid.*, two or three officers "rushed" him, "picked [him] up off the ground," and then "threw [him] to the floor," Young Dep. 94:12-13, 100:21-24.

Once on the ground, the officers "started kicking [him] [and] stomping [him]" for about fifteen seconds until they were able to handcuff him.  *See* Young Dep. 98:15-16, 98:19-20, 102:11-13, 105:14-16.  Even after Mr. Young was handcuffed, the officers kept kicking and stomping him

for another fifteen seconds.  *See* Young Dep. 102:13-14, 105:8-10.  At some point after the officers lifted him up, Mr. Young lost consciousness.  *See* Young Dep. 110:1-5.  Mr. Young denied ever resisting arrest.  *See* Young Dep. 94:14-16, 164:11-12.

Several of Mr. Young's neighbors have submitted declarations that provide some corroboration for Mr. Young's account.  Tanisha Nock and her daughter Latiqua Blockwood said that they "saw at least four [p]olice beating" Shaun Young "while he was sitting on the ground." Decl. of Witness Tanisha Nock ¶ 6 (Dkt. #46-10) ("Nock Decl."); Decl. of Latiqua Blockwood ¶ 6 (Dkt. #46-11) ("Blockwood Decl").  Specifically, they saw the officers "beating him, kicking him and poking him with their night sticks."  Nock Decl. ¶ 6; Blockwood Decl. ¶ 6.  Mr. Young's mother Danielle Maness-Williams also recalled that Ms. Nock and Ms. Blockwood told her at the time of the arrest that the police "were kicking Shaun while he was on the ground, and they were poking him with their nightsticks."  Aff. of Witness Danielle Maness-Williams ¶ 11 (Dkt. #46-6) ("Maness-Williams Aff.").

After the officers arrested Mr. Young, they took him to the police precinct.  Defs.' Statement ¶ 24; *see* Wilson Decl. Ex. I at D 0707.  Police records indicate that there, Mr. Young complained that he felt knee and chest pains and told officers that he had a history of seizures, *see ibid.*, so the officers called an ambulance, *see* Defs.' Statement ¶ 25; Wilson Decl. Ex. J. at D 0653-55.  Prehospital records indicate that, in the ambulance, Mr. Young repeated that he felt pain in his ribs and knees, *see* Defs.' Statement ¶ 26; Wilson Decl. Ex. J. at D 0653-655, but the medical professionals were not able to do a full assessment, because Mr. Young was uncooperative, *see* Wilson Decl. Ex. J. at D 0654.  Hospital records indicate that, at the emergency department, Mr. Young complained that he felt pain in his ribs and knees, and he was given a diagnosis code of abdominal pain.  *See* Wilson Decl. Ex. K. at D 0640, D 0641, D 0643, D 0645.  Hours later, he

told the emergency physician that the pain had resolved itself.  *See* Defs.' Statement ¶ 27; Wilson Decl. Ex. K. at D 0643, 0649.  Records from the emergency physician indicate that he received a physical exam, which found no apparent distress beyond abdominal pain of an "unknown etiology."  Wilson Decl. Ex. K. at D 0651-52.

In his deposition, Mr. Young stated that he did not regain consciousness until he woke up in the hospital.  *See* Young Dep. 110:1-5.  He said that when he woke up, his head, ribs, and knees were all hurting.  *See* Young Dep. 111:4-11.  He said some skin on his shoulder had "peeled off" and scabbed up."  *See* Young Dep. 103:13-19.  He also recalled that his knees and his shoulder had "busted open," and both were bleeding.  *See* Young Dep. 113:1-9.

### B.     Procedural Background

Three years after his arrest, Mr. Young filed this suit under 42 U.S.C. § 1983 against Officer DiPresso, Officer Johnston, Officer Cabrera, Sergeant Casey, two John Doe NYPD Officers, and the City of New York.  Compl. ¶¶ 7-11 (Dkt. #1).  Mr. Young alleged that defendants violated his constitutional rights by using excessive force and fabricating evidence.  *See id.* ¶¶ 28, 31.  Further, he alleged that the City of New York was liable because it had "failed to properly train, screen, supervise, or discipline its employees and police officers."  *Id.* ¶¶ 36-40.

After a pre-motion conference, the Court granted leave for defendants to file a motion for summary judgment.  Dkt. Entry (Dec. 2, 2019).  This motion followed.  Defs.' Notice of Mot. (Feb. 28, 2020) (Dkt. #40).

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. New York City Police Dep't*, No. 19-1163, --- F.3d ----, 2020 WL

6603609, at *5 (2d Cir. Nov. 12, 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A fact is material if it might affect the outcome of the suit under governing law."  *Ibid.*  In assessing the record, I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).

## DISCUSSION

Defendants have moved for summary judgment on all claims.  Mr. Young alleges that defendants used excessive force while arresting Mr. Young and fabricated evidence against Mr. Young.  Further, he alleges that the City of New York is liable because it failed to adequately train, screen, supervise, and discipline its officers.  Defendants have moved for summary judgment on all claims.  On the excessive force claim, I grant summary judgment to defendants in part and deny it in part.  I grant summary judgment to defendants in full on the claims of fabrication of evidence and municipal liability.

### I.    Summary Judgment is Appropriate in Part on the Excessive Force Claim.

In his first three causes of action, Mr. Young alleges that defendants used excessive force during his arrest in violation of the Fourth, Eighth, and Fourteenth Amendments.  *See* Compl. ¶¶ 28, 31, 34.  In his deposition, Mr. Young testified that officers (i) threw him to the ground, *see* Young Dep. 98:13-14, 99:15-19, 100:9-24, where they started (ii) kicking and stomping him for about fifteen seconds before he was handcuffed, *see* Young Dep. 98:15-16, 98:19-20, 105:14-16, and then continued (iii) kicking and stomping him for another fifteen seconds after he was handcuffed, *see* Young Dep. 102:13-14, 105:8-10.  Following the parties, I analyze each of these actions in turn.  *See Tracy*, 623 F.3d at 96-97.  I grant summary judgment to defendants as to

assertions that officers threw Mr. Young to the ground but deny summary judgment to defendants as to assertions that officers kicked and stomped Mr. Young.[1]

###### A.    The Fourth Amendment Governs Claims of Excessive Force During an Arrest.

As an initial matter, insofar as plaintiff alleges that defendants violated the Eighth Amendment or the substantive due process component of the Fourteenth Amendment through use of excessive force, defendants are entitled to summary judgment on those claims.  The Fourth Amendment guarantees the right of citizens to be secure against unreasonable seizures, and an excessive force claim must "be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  Accordingly, "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest" are "analyzed under the Fourth Amendment and its 'reasonableness' standard," *ibid.*, rather than the Eighth Amendment, *see Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018), or the Fourteenth Amendment, *see Graham*, 490 U.S. at 395.

Whether officers used excessive force in violation of the Fourth Amendment depends on whether their use of force was "'objectively reasonable' in light of the facts and circumstances confronting" them. *Id.* at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)).  This test balances "the nature and quality of the intrusion" against "the countervailing governmental interests at stake." *Id.* at 396.  Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ibid.*  The record is assessed "from

---

[1]    To the extent that plaintiff's first cause of action might be read to present a false-arrest claim, plaintiff has explained that he does not bring a claim "for unreasonable seizure of his person arising from a false arrest." Pl.'s Mem. in Opp'n at 13 (Dkt. #47).  And though plaintiff's third cause of action might be read to present a separate assault claim, that claim is "duplicative" of the excessive force claim. *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015); Pl.'s Mem. in Opp'n at 22 ("Plaintiff does not dispute that his separate cause of action for assault and battery . . . may be consolidated into his claim . . . for excessive force.").

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* Given "the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff . . . is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (quoting *Rogoz v. City of Hartford*, 786 F.3d 236, 246 (2d Cir. 2015)).

> **B.    Defendants Are Entitled to Summary Judgment on the Claim that Officers Used Excessive Force by Throwing Mr. Young to the Ground.**

>> **1.    The Officers Acted Reasonably Under the Circumstances When They Tackled Mr. Young.**

I grant summary judgment to defendants as to plaintiff's claim that officers used excessive force when they threw Mr. Young to the ground.  Specifically, according to Mr. Young, one officer grabbed his legs, another officer grabbed his arms, the officers picked him off the ground, and then the officers threw him to the ground.  *See* Young Dep. 100:9-24. Even assuming Mr. Young's account to be true, no reasonable jury could conclude that this conduct was objectively unreasonable given all of the circumstances.

First, the officers were attempting to arrest someone who had been identified as the perpetrator of a serious crime.  "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and the degree depends in part on "the severity of the crime at issue." *Graham*, 490 U.S. at 396.  It is undisputed here that Mr. Young had been identified to the officers as someone who had just committed a robbery at knifepoint.  Defs.' Statement ¶¶ 1, 8; Pl.'s Statement ¶¶ 1, 8.  That act qualifies as robbery in the first degree under New York law, *see* N.Y. Penal Law § 160.15(3); *People v. Ford*, 903 N.E.2d 256, 258 (N.Y. 2008), a felony punishable up to twenty-five years in prison, *see* N.Y. Penal Law §§ 160.15, 70.02(a), 70.02(3)(a).  Courts in this circuit have held comparable force to be reasonable in arresting individuals suspected of less serious crimes.  *See, e.g.*, *Blackwood v. Omorvan*, No.

16-CV-644, 2019 WL 4600662, at *6 (S.D.N.Y. Sept. 23, 2019) (granting summary judgment to officers who tackled a suspect who "had been disruptive at a hospital"); *Flanigan v. Town of Colchester*, 171 F. Supp. 2d 361, 365 (D. Vt. 2001) (granting summary judgment to officer who knocked feet out from under arrestee who had threatened neighbor with a BB gun); *cf. Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) (affirming grant of summary judgment in favor of patrolmen who pushed trespasser onto his stomach in order to handcuff him).

Second, the officers were attempting to arrest someone who likely possessed a weapon. The reasonableness of force varies with the threat posed by the arrestee. *See Graham*, 490 U.S. at 396; *Johnson v. City of New York*, No. 05-CV-2357, 2006 WL 2354815, at *4 (S.D.N.Y. Aug. 14, 2006) ("The more precarious a particular situation, the more substantial the force that can be used."). Mr. Young emphasizes that "his physical condition does not suggest that he would pose a threat" because "[h]e is slightly built, has cerebral palsy, walks with a limp, had kidney problems and suffers from seizures." Pl.'s Mem. in Opp'n at 15-16. But there is no dispute that Mr. Young had been identified to officers as someone who had just threatened another man with a knife. Defs.' Statement ¶¶ 1, 8; Pl.'s Statement ¶¶ 1, 8. Nor is there any dispute that Mr. Young was not handcuffed when apprehended. *See* Pl.'s Statement ¶ 15; Defs.' Statement ¶ 13. Courts in this circuit have held that officers did not violate the Fourth Amendment by taking an arrestee to the ground when officers had far less information to suggest that an arrestee possessed a weapon. *See, e.g.*, *Massaro v. Jones*, 323 F. App'x 68, 70 (2d Cir. 2009) (affirming summary judgment when officers forced to the ground an arrestee who had "previously been convicted of crimes involving weapons"); *Flanigan*, 171 F. Supp. 2d at 365 (granting summary judgment when officer knocked feet out from an arrestee whose BB gun was in his house); *cf. Hardy v. Plante*, No. 06-CV-687,

2009 WL 249787, at *6 (N.D.N.Y. Feb. 3, 2009) (granting summary judgment where officer punched and tased arrestee who "matched the description of a suspect in a stabbing").

In opposition, Mr. Young argues that the officers did not act reasonably in throwing him to the ground because he did not resist arrest. *See* Pl.'s Mem. in Opp'n at 21. Instead, according to Mr. Young, he was yelling at officers and telling them "I didn't do it" when he was tackled. *See* Young Dep. 98: 23-25. But whether an arrestee "is actively resisting arrest" is only one factor bearing on whether officers acted reasonably in using force. *Graham*, 490 U.S. at 396. Taking into account all the circumstances here, a reasonable jury could not find that defendants acted unreasonably in tackling a suspect whom they understood to be carrying a knife and to have just threatened to stab another person, when the suspect had not yet been restrained and was shouting at officers.

### 2. Qualified Immunity Would Shield the Officers from Liability for Tackling Mr. Young to the Ground.

Even if tackling Mr. Young amounted to excessive force under these circumstances, qualified immunity would shield the officers from liability. Qualified immunity shields officers from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotations omitted).

The parties point to no precedent that would have informed Officers DiPresso, Johnston, and Cabrera in May 2015 that they could not tackle an arrestee to the ground under circumstances like those presented here.  Indeed, there appears to be no precedent that forbade taking to the ground an arrestee suspected of committing a crime with a knife and who likely possessed a knife. To the contrary, existing precedent held force to be reasonable when "the risk posed to officer safety appeared to be both real and imminent," *Tracy*, 623 F.3d at 97, such as when officers had reason to believe that the arrestee possessed a weapon, *Massaro*, 323 F. App'x at 70 (declaring force to be reasonable when arrestee had "previously been convicted of crimes involving weapons").

In contending that it was clearly established at the time of Mr. Young's arrest that the officers' conduct reflected an unreasonable use of force, Mr. Young relies on *Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018).  But that case is inapposite.  In *Outlaw*, the court of appeals held that qualified immunity did not bar liability where an officer "repeatedly beat[] an unresisting, supine, jaywalking suspect with a stick," thereby "bloodying his head in several places and breaking his knee."  *Id.* at 356-57, 367.  The opinion obviously does not concern just tackling an arrestee.  Moreover, the arrestee in *Outlaw* was suspected of a far less serious crime that did not involve a weapon.  Accordingly, *Outlaw* would not have informed the officers here that tackling Mr. Young to the ground would qualify as excessive force.  Defendants are therefore entitled to qualified immunity with respect to their alleged tackling of Mr. Young.

### C.    Summary Judgment is Not Appropriate on the Claims that Officers Kicked and Stomped Mr. Young.

I deny summary judgment as to claims that officers used excessive force by kicking and stomping Mr. Young before and after he was handcuffed.

### 1.     The Parties' Evidentiary Objections are Denied.

Before assessing the merits of this issue, I consider evidentiary objections bearing on the summary judgment record for these claims. *See Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). Plaintiff has submitted declarations from his neighbors Tanisha Nock and Latiqua Blockwood, and defendants argue that these declarations should be precluded or deemed inadmissible. *See* Defs.' Reply Mem. at 3-4 (Dkt. #44).[2] Defendants submit medical records, and plaintiff argues that these records are inadmissible. *See* Pl.'s Mem. in Opp'n at 24. Neither objection succeeds.

Defendants first argue that Tanisha Nock and Latiqua Blockwood's declarations should be precluded because these witnesses were not properly disclosed under Federal Rule of Civil Procedure 26(a)(1)(A). *See* Defs.' Reply Mem. at 3. That rule requires that "a party must, without awaiting a discovery request, provide other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claim or defenses." Defendants represent that "plaintiff never served any initial or supplemental disclosures in this case." Defs' Reply Mem. at 3.

Even so, preclusion does not follow. "[U]nder Rule 37, it is within the court's discretion to preclude evidence submitted in violation of Rule 26(a) from use on a motion," *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 434 (S.D.N.Y. 2014) (citing *Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x. 84, 85 (2d Cir. 2008)), but "[p]reclusion is a harsh remedy that should be imposed only in rare situations," *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287,

---

[2]     Plaintiff also submits a declaration from Danielle Maness-Williams, who is Mr. Young's mother. *See* Maness-Williams Aff. (Dkt. #46-6). Because this declaration is largely duplicative of the declarations submitted by Tanisha Nock and Latiqua Blockwood, and because other evidence in the record is sufficient to establish that there is a genuine dispute of material fact as to whether Mr. Young was kicked and stomped, I need not resolve whether the affidavit from Ms. Maness-Williams contains admissible evidence.

304 (S.D.N.Y. 2015) (quotations omitted).  To determine whether preclusion is warranted, a court considers "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Taken together, these factors counsel against preclusion here.  Plaintiff has not explained the initial nondisclosure.  But the declarations from Ms. Nock and Ms. Blockwood are important as accounts from contemporaneous witnesses.  And the prejudice to defendants is minimal because in responses to interrogatories, plaintiff identified Ms. Blockwood and Ms. Nock to defendants as "individuals who had witnesse[d] his [b]eating by members of the City of New York Police Department."  Pl.'s Response to Defs.' First Demand for Interrogatories (Dkt. #46-2).  Defendants suffered little prejudice from plaintiff's failure to identify those witnesses in initial disclosures given that the witnesses were identified in interrogatory responses with ample time for defendants to depose them.  Nor do I find a continuance warranted, because defendants have given no indication that they would like additional time to depose these witnesses before the summary judgment motion is resolved.

Defendants also argue that these declarations should be precluded because they only "contain hearsay that does not fall within any exception and/or are not relevant to the issues at hand."  Defs.' Reply Mem. at 4.  But the declarations mostly relay what Ms. Nock and Ms. Blockwood observed on the night in question.  Such declarations "submitted to defeat summary judgment" need not be admissible themselves so long as they "contain evidence that will be presented in an admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)

(per curiam).  Defendants offer no reason to believe that plaintiff will be unable to call Ms. Nock and Ms. Blockwood at trial to testify as to what they observed.

For his part, plaintiff argues that defendants may not rely on any medical or hospital records in support of their summary judgment motion because these records are not certified, so they are not admissible as business records under Fed. R. Evid. 803(6).  *See* Pl.'s Mem. at 24.  For similar reasons, this objection fails as well.  "It is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial."  *Perpall v. Pavetek Corp.*, No. 12-CV-0336, 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (quotations omitted).  There is no reason here to think that defendants will not be able to provide certification or an authenticating witness at trial.  To the contrary, "[a] review of the medical records submitted by [d]efendants in this case reveals nothing that would indicate a lack of trustworthiness."  *Id.* at *8.  "Their appearance, contents, and substance are what one would expect of such records and support [defendants'] claim that they are what they appear to be."  *Ibid.*

### 2.    A Reasonable Jury Could Find that Officers DiPresso, Johnston, and Cabrera Kicked and Stomped Mr. Young.

Defendants first argue that summary judgment is appropriate because no reasonable jury could find that officers kicked and stomped Mr. Young.  *See* Defs.' Mem. at 14-17 (Dkt. #41). But to the contrary, the record reflects a genuine dispute on that question.  Mr. Young testified that three officers "started kicking [him] [and] stomping [him]" for about fifteen seconds until they were able to handcuff him.  *See* Young Dep. 98:15-16, 98:19-20, 102:11-13, 105:14-16.  He then testified that after he was handcuffed, the officers kept kicking and stomping him for another fifteen seconds.  *See* Young Dep. 102:13-14, 105:8-10.  This "testimony alone" is ordinarily "independently sufficient to raise a genuine issue of material fact."  *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).  And Mr. Young's statements are corroborated by declarations

14

from his neighbors, Tanisha Nock and her daughter Latiqua Blockwood, in which they say that they saw officers "beating him, kicking him, and poking them with their night sticks" while "he was sitting on the ground."   Nock Decl. ¶ 6; Blockwood Decl. ¶ 6.  Mr. Young's testimony, coupled with the declarations, raises a genuine dispute of material fact as to whether officers engaged in the conduct that Mr. Young claims.

Defendants principally argue that Mr. Young's medical records would foreclose a reasonable jury from finding that officers kicked and stomped Mr. Young.  *See* Defs.' Mem. at 14, 16.  However, a court "may not make credibility determinations or weigh the evidence" on a motion for summary judgment, *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quotation omitted), unless a litigant's account is "so utterly discredited by the record that no reasonable jury" could believe it, *see Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  This is not such a case.  To be sure, the medical records undercut plaintiff's testimony regarding the extent of his injuries.   For example, plaintiff testified that he was bleeding, and the medical records do not reflect that harm.  But as to plaintiff's testimony about whether the officers kicked and stomped him, the records at most provide "ammunition for cross-examination," not grounds for summary judgment.  *Galberth v. Durkin*, No. 14-CV-115, 2017 WL 4325774, at *8 (N.D.N.Y. Aug. 31, 2017), *report and recommendation adopted*, No. 14-CV-115, 2017 WL 4326076 (N.D.N.Y. Sept. 27, 2017).  It remains "for the fact-finder to assess whether and to what extent the medical evidence strips that testimony of its credibility." *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006).

### 3.    A Reasonable Jury Could Find that the Named Officers were Personally Involved in the Alleged Use of Force.

Defendants further argue that they are entitled to summary judgment on plaintiffs' excessive force claim because plaintiff "has failed to identify which officers purportedly kicked

and stomped him." Defs.' Mem. at 18. "An individual may be held liable under . . . [Section] 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). But evidence of "direct physical participation . . . in the constitutional violation" by those who "ha[d] knowledge of the facts that rendered the conduct illegal" ordinarily suffices, *see Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001), and this issue is a question of fact treated like all others on summary judgment, *see Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Here, a reasonable jury could readily find that Officers DiPresso, Johnston, and Cabrera were the officers who used excessive force against Mr. Young during his arrest. Mr. Young testified that he was kicked and stomped by three officers, *see* Young Dep. 103:6-10, and there is no dispute that Officers DiPresso, Johnston, and Cabrera were the three officers who arrested him, *see* Defs.' Statement ¶ 14; Johnston Decl. ¶ 16.

Further, because there is a genuine dispute as to whether Officers DiPresso, Johnston, and Cabrera kicked and stomped Mr. Young, there is also a genuine dispute as to whether Sergeant Casey is liable for failing to intercede. "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). There is no dispute that while Mr. Young was being arrested, Sergeant Casey was present on the scene. *See* Defs.' Statement ¶ 11; DiPresso Decl. ¶¶ 12-13; Johnston Decl. ¶ 13. Crediting Mr. Young's testimony that the arrest took at least fifteen to thirty seconds, *see* Young Dep. 105:8-16, a reasonable jury could also find that Sergeant Casey had enough time to intervene, *see Figueroa*, 825 F.3d at 107-08 (concluding that jury must decide failure-to-intervene claim even "assuming that the assault lasted less than twenty seconds").

16

However, a reasonable jury could not find based on the record in this case that any additional unnamed officers used excessive force against Mr. Young.  Plaintiff's evidence indicates that at most four officers were on the scene, *see* Nock Decl. ¶ 6; Blockwood Decl. ¶ 6, and defendants' evidence shows the same, *see* Defs.' Statement ¶ 11; DiPresso Decl. ¶¶ 12-13; Johnston Decl. ¶ 13.  Those four officers have been identified, and there is nothing to indicate that additional officers played any role in the alleged constitutional violations.  In any event, "[i]t is well settled that where . . . discovery has closed, the proper course is to dismiss the John Doe Defendants without prejudice."  *Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 618 (S.D.N.Y. 2017); *see Sachs v. Cantwell*, No. 10-CV-1663, 2012 WL 3822220, at \*10 (S.D.N.Y. Sept. 4, 2012).  The unnamed defendants are therefore dismissed from the case.

### 4.    A Reasonable Jury Could Find that Mr. Young Suffered a Cognizable Injury.

Lastly, defendants argue that they are entitled to judgment as a matter of law because Mr. Young at most suffered *de minimis* injuries.  As an initial matter, at least four circuits have rejected the premise of this argument—concluding that a plaintiff may bring an excessive force claim even if he suffered only *de minimis* injury.  *Rizk v. City of New York*, 462 F. Supp. 3d 203, 223 (E.D.N.Y. 2020) (collecting cases); *see Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) (per curiam) ("[We] [f]ind[] no support for Defendants' contention that suffering only de minimis injuries bars one from asserting a Fourth Amendment excessive force claim."); *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("We are not convinced . . . that evidence of only de minimis injury necessarily forecloses a claim of excessive force under the Fourth Amendment."); *United States v. Rodella*, 804 F.3d 1317, 1328-29 (10th Cir. 2015) ("[W]e reject the . . . premise . . . that there is a de minimis injury requirement for Fourth Amendment excessive force claims in cases which involve more than handcuffing."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[A]

plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages if he does not have compensable injuries.").

While the Second Circuit has not squarely addressed whether a plaintiff who suffered truly *de minimis* harm may bring an excessive force claim, it has made clear that, at minimum, "the absence of significant injury . . . is not dispositive under a Fourth Amendment analysis." *Jones v. Treubig*, 963 F.3d 214, 239 (2d Cir. 2020).  And Mr. Young has alleged here that he suffered rib, knee, and abdominal pain for hours after being kicked and stomped.  *See* Wilson Decl. Ex. J. at D 0653-55; Wilson Decl. Ex. K. at D 0640, D 0641, D 0645.  Even assuming *arguendo* that some category of *de minimis* harms do not give rise to a Fourth Amendment claim, I decline to hold that an arrestee who suffered hours of pain after being kicked and stomped by police officers falls into such a category.  Indeed, the injuries he claims are at least as serious as injuries found sufficient for a Fourth Amendment claim in this circuit in recent years.  *See Jones*, 963 F.3d at 239 (reversing summary judgment where plaintiff testified that "he felt numb for 30 to 40 minutes after being tased"); *Sash v. United States*, 674 F. Supp. 2d 531, 540 (S.D.N.Y. 2009) (denying summary judgment where plaintiff only "insist[ed] that the incident caused pain in his neck and back" and "reported tightening in his chest one hour after the arrest").  I therefore decline to grant summary judgment to defendants based on the extent of plaintiff's injuries.

Separately, defendants argue that plaintiff's injuries are "demonstrative of the *de minimis* nature of the force used to subdue and handcuff him."  Defs.' Mem at 17.  It is true that "[n]ot every push or shove . . . violates the Fourth Amendment," *Graham*, 490 U.S. at 398, because there is some "physical contact common to virtually every custodial arrest," *Figueroa*, 825 F.3d at 105-06.  But "kicking and stomping" an arrestee is more than *de minimis* force, and that is the conduct testified to here.  *See Johnson*, 2006 WL 2354815, at *5 (denying summary judgment

when officers kicked and stomped person during search); *Davis v. City of New York*, No. 04-CV-3299, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (denying summary judgment when arrestee was "intentionally kicked . . . while handcuffed on the floor").  To the extent that defendants argue that plaintiff's injuries show that officers did not kick and stomp Mr. Young, that argument is rejected for the reasons it was rejected before: plaintiff's own deposition testimony and the declarations submitted at the summary judgment stage create a genuine issue of material fact, even if plaintiff only suffered slight injuries.  Summary judgment is therefore denied as to these allegations.

## II.   Summary Judgment is Appropriate on the Fabrication of Evidence Claim.

Defendants also seek summary judgment on plaintiff's fabrication of evidence claim.  I grant summary judgment to defendants on that claim, because plaintiffs have not presented any evidence that any officer fabricated information or forwarded that information to a prosecutor.  To make out a fabrication of evidence claim, a plaintiff must at least show that "a police officer create[d] false information likely to influence a jury's decision and forward[ed] that information to prosecutors."  *Bellamy v. City of New York*, 914 F.3d 727, 745 (2d Cir. 2019) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  The complaint's first cause of action indeed includes a one-line allegation that defendants violated plaintiff's right to be "free[] from having [p]olice fabricate evidence."  Compl. ¶ 28.  But the complaint has no factual allegations to support this claim, and plaintiff has never presented any evidence that defendants fabricated evidence.  Indeed, even after defendants identified this absence, plaintiff did not defend this fabrication of evidence claim in his opposition to defendants' motion for summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (permitting judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

Even viewing the evidence in the light most favorable to the plaintiff, a jury could not find that any defendant created false information or forwarded that information to a prosecutor.

### III.   Summary Judgment is Appropriate on the Municipal Liability Claim.

Finally, defendants are entitled to summary judgment on plaintiff's municipal liability claim. Although there are genuine disputes of material fact as to whether certain officers violated plaintiff's constitutional rights, a municipality is not liable under Section 1983 merely "by application of the doctrine of *respondeat superior*." *Lucente v. Cty of Suffolk*, No. 19-347, --- F.3d ----, 2020 WL 6733477, at *8 (2d Cir. Nov. 17, 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). Rather, to demonstrate municipal liability under Section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Ibid.* (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

Defendants are entitled to judgment as a matter of law because plaintiff has not sufficiently established any relevant official policy or custom that caused the purported violation of his rights. Ordinarily, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Plaintiff's fourth cause of action alleges only that the City "failed to properly train, screen, supervise or discipline its employees and police officers," Compl. ¶ 38, and that under the umbrella of failure of supervision, the City "had defacto policies . . . including but not limited to the improper and inadequate supervision of the Street Crimes Units and Anti Crime Units operating in plainclothes in the County of Queens," *id.* ¶ 37. Plaintiff further alleges that these actions "were a direct and proximate cause of the unconstitutional conduct" suffered by Mr. Young, *id.* ¶ 39. But such "conclusory statements, conjecture, [and] speculation

20

by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

Aside from these allegations, plaintiff has provided no evidence tending to show that the City had any policies reflecting a failure to train, screen, supervise, or discipline its officers. Even on a motion to dismiss, a "mere assertion" that "a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero v. City of Yonkers*, 890 F.3d 386, 403-04 (2d Cir. 2018). Nor can the disputed constitutional conduct by the officers here make up the difference. Even if true, the single incident of unconstitutional activity disputed in this case cannot suffice to demonstrate a consistent practice that constitutes a de facto policy or custom. *See Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019) (four instances). Such isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability," *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012), and do not alone show that "the alleged practice [was] so manifest as to imply the constructive acquiescence of senior policymaking officials," *Hu*, F.3d at 106. Summary judgment to defendants is therefore appropriate on plaintiff's municipal liability claim.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted on allegations that defendants used excessive force in throwing Mr. Young to the ground. The motion is also granted with respect to allegations that defendants used excessive force in violation of the Eighth and Fourteenth Amendments. Further, the motion is granted with respect to any allegations as to any unnamed defendants.

Additionally, defendants' motion for summary judgment is granted on allegations that defendants fabricated evidence. And the motion is granted with respect to allegations that the City

of New York is liable for any purported constitutional violations.  Accordingly, the Clerk of Court is directed to dismiss the City of New York and any unnamed officers at this time.

Defendants' motion for summary judgment is denied as to allegations that Officers DiPresso, Johnston, and Cabrera used excessive force in kicking and stomping Mr. Young before and after he was handcuffed.  The motion is also denied as to allegations that Sergeant Casey failed to intervene while other officers used excessive force.  Because genuine disputes of material fact remain as to these allegations, litigation may continue as to those claims.

SO ORDERED.

        */s/  Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:       November 30, 2020
            Brooklyn, New York