UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SHAUN YOUNG,

                Plaintiff,

       -against-

ERIC CABRERA, SHAWN JOHNSTON,
KEITH DI PRESSO, and NEIL CASEY,

                Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
18-cv-3028 (RPK) (ST)

RACHEL P. KOVNER, United States District Judge:

At the conclusion of a four-day trial, a jury rejected plaintiff Shaun Young's claims that New York Police Department ("NYPD") officers Keith DiPresso, Shawn Johnston, and Eric Cabrera used excessive force against him, and plaintiff's claim that NYPD Sergeant Neil Casey failed to intervene in that conduct. *See* Judgment (Dkt. #88); Verdict Sheet (Dkt. #90). Plaintiff now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). *See* Pl.'s Mot. for a New Trial (Dkt. #94-1) ("New Trial Mot."). As explained below, the motion is denied.

## BACKGROUND

### A. Factual Background

In the early morning of May 23, 2015, a man named Roland Chateau was robbed at knifepoint in front of a store in Rockaway Beach, Queens. *See* Tr. of Jury Trial on June 10, 2022, at 378–80 ("6/10/22 Tr."). Mr. Chateau called the police. *See id.* at 380–81. When defendant Officers DiPresso and Johnston arrived, Mr. Chateau indicated that the assailant had fled in the direction of a nearby housing complex. *See* Tr. of Jury Trial on June 9, 2022, at 330–32 ("6/9/22 Tr."). After accompanying the officers to the complex in their police vehicle, Mr. Chateau spotted plaintiff Shaun Young and identified him as the robber. *See id.* at 333–34.

1

Officers DiPresso and Johnston approached plaintiff. Officer Cabrera and Sergeant Casey arrived at the scene shortly thereafter. *See* 6/10/22 Tr. 489–90.

The trial in this case concerned what happened next. Defendants claimed they approached plaintiff, identified themselves as police officers, and informed plaintiff that he was under arrest. *See id.* at 455–56. But defendants say that when they asked plaintiff to put his hands behind his back, he refused, so Officers DiPresso and Johnston grabbed his arms. Plaintiff then tried to break free, so those two officers, along with Officer Cabrera—who had by then arrived on the scene—wrestled plaintiff to the ground. *See id.* at 456–57. At that point, Officer Cabrera held down plaintiff's legs as the other two officers handcuffed plaintiff. *See id.* at 494–95. The officers then searched plaintiff and found a pocket knife and a couple of dollars. *See id.* at 460.

Plaintiff tells a different story. By his account, after the officers identified themselves and mentioned the robbery, they rushed him, threw him to the ground, and, once he was there, kicked and stomped on him until he was handcuffed, and continued kicking him even after he was cuffed. *See* Tr. of Jury Trial on June 8, 2022, at 37–40 ("6/8/22 Tr."). Plaintiff says he never resisted arrest. *See id.* at 41.

### B. Lawsuit and Trial

Three years after his arrest, plaintiff filed this Section 1983 lawsuit against Officers Cabrera, DiPresso, and Johnston, Sergeant Casey, two John Doe NYPD Officers, and the City of New York. *See* Compl. ¶¶ 7–11 (Dkt. #1). Plaintiff alleged that defendants violated his constitutional rights by using excessive force and fabricating evidence. *See id.* ¶¶ 28, 31. He further alleged that the City of New York was liable for failing to properly train and supervise the officers involved in the arrest. *See id.* ¶¶ 36–40.

After discovery, I granted summary judgment to defendants on plaintiff's claims for fabrication of evidence and municipal liability, as well as all his claims against the John Doe

2

defendants. *See* Mem. & Order dated Nov. 30, 2020, at 6, 17, 19–21 (Dkt. #49) ("Summary Judgment Order"). As to plaintiff's excessive force claims, I granted in part and denied in part defendants' motion. I first determined that no reasonable jury could conclude that defendants used excessive force when they grabbed plaintiff's legs and arms, "picked him [up] off the ground, and then . . . threw him to the ground." *Id.* at 8. But I concluded that summary judgment was not appropriate as to plaintiff's claims that officers Cabrera, DiPresso, and Johnston used excessive force when, after bringing plaintiff to the ground, the officers kicked and stomped on him repeatedly both before and after he was handcuffed. *See id.* at 11–19. I likewise found that there was a triable question as to whether Sargent Casey had violated plaintiff's rights by failing to intervene in that conduct. *See id.* at 16.

At the four-day jury trial that followed, plaintiff's case consisted of his own testimony and that of his mother, Danielle Maness Williams. In a brief direct examination, plaintiff testified that he never resisted arrest and that the officers attacked him, causing injuries to his shoulder, ribs, chest, knee, and back. *See* 6/8/22 Tr. 36–47. Plaintiff testified that at some point that evening he was transported to the hospital, but that he did not remember how he got there. *See id.* at 51–52 (cross-examination). Next, plaintiff's mother testified that, while she was at home during the alleged assault and thus did not witness it firsthand, *see* 6/9/22 Tr. 160, three neighbors—Tanisha Nock, Latiqua Blockwood, and one of plaintiff's friends known only as Jarel—came to her door and told her that she needed to come downstairs because they had seen (from the window of their apartment) police "knock[] [plaintiff] down" and "harass[]," "beat[]," and "kick[]" plaintiff. *Id.* at 163, 211–13. Ms. Williams stated that by the time she made it downstairs, the police had left, so she went to the police precinct, where police informed her that plaintiff was in the hospital. *Id.* at 174. She testified that when she saw plaintiff in the hospital, he had bruising on his arm, knee,

3

and ribs, and was "out of it, like very upset, exhausted and just tired." *Id.* at 185. After plaintiff and his mother finished their testimony, plaintiff's counsel intended to call Blockwood and Nock to testify, but despite repeated efforts to secure their appearances, the two never appeared. *See id.* at 322–24. So plaintiff rested.

Defendants' case was similarly succinct, consisting of the testimony of just one defendant, Officer Johnston, and the victim of the robbery, Roland Chateau. Officer Johnston testified that plaintiff refused to comply with orders to put his hands behind his back, so the officers took him to the ground, where plaintiff continued to resist arrest until the officers were finally able to place him in handcuffs. *See* 6/10/22 Tr. 456–59. Johnston denied that any officer ever kicked or stomped on plaintiff during this interaction, and stated that to his knowledge plaintiff did not sustain any injuries. *See id.* at 460–61. Mr. Chateau corroborated that version of events, testifying that he was able to see the entire arrest from inside a police car and that he never saw any officer kick, stomp, or otherwise hit or strike plaintiff. *See id.* at 389–91, 394.

After a brief rebuttal case in which plaintiff retook the stand to testify about the characteristics of the knife he had on him at the time of his arrest, *see id.* at 522–24, the parties delivered closing arguments. Defense counsel's summation focused on the lack of evidence to corroborate plaintiff's account: the medical records from his hospital stay on the night of the arrest did not mention an assault or any injuries consistent with plaintiff's story, and no other eyewitnesses testified. *See id.* at 525–34. While the jury heard the statements of Nock and Lockwood through the testimony of plaintiff's mother, defense counsel questioned why those witnesses had not come to testify themselves: "Why didn't they come and testify? Because none of them were willing to come to federal court and commit perjury by saying that any officers kicked or stomped the plaintiff." *Id.* at 534. And defense counsel pointed out other evidence that

4

was missing: while plaintiff claimed to have taken pictures of his injuries, he testified that those photos were lost; and while plaintiff testified that one of his friends had taken a video of the assault, he now claimed that that video was lost as well. *Id.* at 534–35. Finally, defense counsel pointed to the testimony of Mr. Chateau, who had a clear view of the arrest and stated he did not see any of the defendants attack the plaintiff. *Id.* at 538–39.

Plaintiff's summation, in turn, highlighted the fact that three of the defendant officers elected not to testify. Paralleling defense counsel's statement about Nock and Blockwood, plaintiff's counsel suggested the officers had not testified because "[i]t doesn't make sense to get up there and perjure yourself when you know what you have to say is not going to be the truth." *Id.* at 542–43. Counsel also pointed out some inconsistencies in the testimony of Mr. Chateau, *see id.* at 550–51, and argued that plaintiff's account was more plausible than Officer Johnston's.

After deliberations, the jury returned a verdict for defendants.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(a)(1)(A), a district court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." This rule permits courts to grant new trials in four sets of circumstances: "(1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (citing 12 Moore's Fed. Prac., § 59.13[1] (3d ed. 2005)). Such a motion "may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). And while a judge evaluating such a motion is "free to weigh the evidence [her]self, and need not view it in the light most favorable to the verdict winner," the "court should

5

rarely disturb a jury's evaluation of a witness's credibility" and "should only grant such a motion when the jury's verdict is egregious." *Ibid.* (internal quotation marks omitted).

All told, "the granting of a new trial is an extraordinary relief," *Welch*, 871 F. Supp. 2d at 174, that "is warranted 'only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice,'" *Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 709 (2d Cir. 2021) (quoting *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014)). And "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## DISCUSSION

Plaintiff makes five arguments in support of his new trial motion. At the outset, the Court notes that plaintiff's failure to support his arguments with any citations to the trial transcripts or other record materials has rendered his claims hard to parse and harder to evaluate. Defendants assert that the motion should be denied on this basis alone. *See* Defs.' Opp'n to Pl.'s Mot. for a New Trial 3–5 (Dkt. #102) ("Defs.' Opp'n"). Some courts in this Circuit have stated that a movant's "fail[ure] to cite or refer to the trial transcript" may "alone warrant denial of [a new trial] motion." *Hilt Constr. & Mgmt. Corp. v. Permanent Mission of Chad to United Nations in New York*, No. 16-CV-6421 (VB), 2019 WL 5260829, at *2 (S.D.N.Y. Oct. 16, 2019); *AMW Materials Testing, Inc. v. Town of Babylon*, No. 01-CV-4245 (ADS) (ETB), 2008 WL 11449231, at *18 (E.D.N.Y. Mar. 13, 2008) ("[U]nsupported contentions, without any evidence cited from the trial transcript, are insufficient to justify the grant of a new trial."). Even so, the Court has considered each of plaintiff's claims on the merits. Because none are persuasive, the motion is denied.

6

I. **Defense Counsel's Closing Argument Does Not Warrant a New Trial.**

Plaintiff first asserts that a new trial is warranted based on a statement defense counsel made during closing arguments regarding the non-appearance of plaintiff's witnesses Blockwood and Nock—specifically that they were not present "[b]ecause none of them were willing to come to federal court and commit perjury by saying that any officers kicked or stomped the plaintiff." 6/10/22 Tr. 534. That statement does not warrant a new trial.

A movant "is entitled to a new trial when opposing counsel's conduct causes prejudice to [the movant] . . . thereby unfairly influencing [the jury's] verdict." *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 321 (2d Cir. 2004) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998)). "The relevant inquiry in assessing undue prejudice is whether there is a reasonable probability that the jury's verdict was influenced by the improper conduct of counsel." *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 156 (E.D.N.Y. 2013) (internal quotation marks omitted). "[A] party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as '[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.'" *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (quoting *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)). That is especially so "where the jury's verdict finds substantial support in the evidence," as in such cases "counsel's improper statements will frequently be *de minimis* in the context of the entire trial." *Ibid.* When assessing prejudice from a lawyer's statements at trial, "[c]ourts examine the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments," *Johnson v. City of New York*, 593 F. Supp. 3d 58, 71 (S.D.N.Y. 2022) (quotation marks and brackets omitted), as well as "any corrective measures applied by the trial court," *Claudio*, 955 F. Supp. 2d at 156.

7

Moreover, because a party's "claim to have been prejudiced by [his adversary's] summation is considerably undermined by [his] failure to object to the statements in question at trial," *Rowell v. Ferreira*, No. 16-CV-6598 (AJN), 2019 WL 4509048, at *5 (S.D.N.Y. Sept. 19, 2019), a court will grant a new trial based on such a claim only "when the 'error is so serious and flagrant that it goes to the very integrity of the trial,'" *Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 309 (S.D.N.Y. 2009) (citation omitted), *aff'd*, 369 F. App'x 248 (2d Cir. 2010).

Plaintiff has not demonstrated an entitlement to a new trial based on the remarks he challenges in this case. Plaintiff did not contemporaneously object to the challenged statements, *see* 6/10/22 Tr. 534, raising the subject only after the summation had ended, *see id.* at 541 (sidebar). "[T]he general rule" is that a party must "take his objection at the earliest possible opportunity," and this is not the extreme case where the "summation [was] so permeated with improprieties that . . . constant objection during the summation [would have] be[en] useless [or] even detrimental." *United States v. Briggs*, 457 F.2d 908, 911 (2d Cir. 1972); *see United States v. Gambina*, 51 F. App'x 40, 41 n.1 (2d Cir. 2002). Accordingly, defense counsel's statements can warrant a new trial only if they impugned "the very integrity of the trial." *Greenway*, 143 F.3d at 51.

They did not. It is possible that defense counsel exceeded the bounds of permissible argument by going beyond observing that several eyewitnesses had not testified to speculating that the reason was that "none of them were willing to come to federal court and commit perjury by saying that any officer stomped kicked or stomped the plaintiff," 6/10/22 Tr. 534. *See Koufakis v. Carvel*, 425 F.2d 892, 903 (2d Cir. 1970) (disapproving statement in closing argument suggesting that "the reason the party did not testify was that he was terrified of being exposed to the penalties of perjury by a devastating cross examination"). But counsel's remark amounted to a single sentence in a fifteen-page summation. Moreover, "the jury's verdict [here] finds substantial

8

support in the evidence" presented at trial, *Marcic*, 397 F.3d at 124, *see* pp. 12–13, *infra*, and "the jury had the benefit of the court's instructions that counsel's statements do not constitute evidence," *Air China, Ltd. v. Kopf*, 473 F. App'x 45, 51 (2d Cir. 2012); *see* Tr. of Jury Trial on June 13, 2022, at 566 ("6/13/22 Tr.") (jury charge); 6/8/22 Tr. 4 (opening instructions). "Isolated comments in the context of an otherwise proper summation do not warrant a new trial" when the jury has received such instructions. *Kopf*, 473 F. App'x at 51. So, to the extent defense counsel's statement was improper, I conclude that its impact was "*de minimis* in the context of the entire trial," *Marcic*, 397 F.3d at 124, and therefore that it does not warrant a do-over.

## II. The Exclusion of Plaintiff's Knife from Evidence Does Not Warrant a New Trial.

Plaintiff next asserts that the Court erred in declining to admit into evidence the knife police recovered from plaintiff at the time of his arrest. *See* New Trial Mot. 12–13. That argument fails because plaintiff never sought to have the knife admitted as evidence at trial. Indeed, plaintiff vigorously opposed defendants' pretrial proposals to offer the knife as evidence. *See* Joint Pretrial Order 12 (Dkt. #60); Final Pretrial Conf. Tr. 50–53 (Dkt. #99); *see* 6/8/22 Tr. 121. Defendants ultimately did not offer the knife. And when plaintiff's counsel questioned witnesses about the knife, he deliberately avoided putting the knife before the jury. For example, both during his cross-examination of Mr. Chateau and in a sidebar immediately prior, plaintiff's counsel indicated that he did not seek to publish the knife to the jury. *See* 6/10/22 Tr. 434 ("[Plaintiff's counsel]: We're not putting this in evidence, right?") (sidebar); *id.* at 436 ("[Plaintiff's counsel]: The jury doesn't have to see it, right? THE COURT: Right."). And after the Court granted plaintiff's counsel's request for plaintiff to "testify on rebuttal whether this is his knife, what he uses it for, and the dimensions of the knife," *id.* at 509, 519–20, plaintiff's counsel showed the knife to plaintiff and asked him about it, but never sought to publish the knife to the jury or admit the knife as an exhibit, *see id.* at 522–24. A party "cannot complain about the district court's 'decision' to refuse to admit

9

evidence that he never moved to admit." *United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) (quoting *United States v. Harvey*, 959 F.2d 1371, 1374 (7th Cir. 1992)). Accordingly, "[b]y failing to offer [the knife] into evidence at trial, [plaintiff] has waived any right to argue . . . that [it] should have been admitted" and that the failure to do so requires a new trial. *Ibid.*

### III. The Exclusion of Testimony Regarding Plaintiff's Pre-Existing Medical Conditions Does Not Warrant a New Trial.

Plaintiff next challenges the Court's ruling *in limine* precluding the introduction of evidence of plaintiff's pre-existing medical conditions—including "cerebral palsy," "epilepsy," "kidney problems," and "leg problems"—to discredit defendants' statements that plaintiff resisted arrest or that the use of force was necessary. *See* New Trial Mot. 14–16. Because plaintiff cannot show that excluding this evidence was a "substantial error[]," *Welch*, 871 F. Supp. 2d at 174, a new trial is not warranted on this basis.

As explained at the final pretrial conference, *see* Final Pretrial Conf. Tr. 33–36, evidence of plaintiff's medical conditions was properly excluded under the Second Circuit's decision in *Chamberlain v. City of White Plains*, 960 F.3d 100 (2d Cir. 2020). Defendants in that case knocked the decedent to the ground with a beanbag shotgun, but testified that he "got back up and started running toward [them]," at which point one defendant shot and killed him. *Id.* at 117. Plaintiff sought to introduce evidence of the decedent's medical history "to discredit" defendants' account by showing that it would not have been physically possible for the decedent to charge at the officers in this way. *Ibid.* The Second Circuit affirmed the district court's decision to exclude this evidence, first proposed "[l]ong after the close of discovery[] in a motion *in limine*," because the testimony of a medical expert would be required to properly present such evidence, and plaintiff could not produce an expert because he had not complied with Rule 26's requirements for doing so. *Ibid.* (explaining that "without a physician testifying about what [the decedent's] conditions

10

were—and the effect they would have had on [his] physical health and ability to act in the manner that the officers claimed he did—the records would have required the jury to speculate as to the effect those conditions had on [the decedent]" and were thus inadmissible as irrelevant under Federal Rule of Evidence 401). Based on that controlling precedent, I granted defendants' motion *in limine* to exclude evidence of plaintiff's preexisting medical conditions because "without a medical expert to testify" about the severity of those conditions, "the jury would have to speculate on the effect" they had "on the plaintiff and on the plaintiff's ability to act in the manner that the officers claim that he did." Final Pretrial Conf. Tr. 35–36.

Plaintiff's new trial motion makes no attempt to explain why *Chamberlain* is inapposite, and indeed does not even cite the case. *See* New Trial Mot. 14–16; Pl.'s Reply in Support of New Trial Mot. 8–9 (Dkt. #104). Plaintiff has thus failed to identify any reason to think that excluding his lay medical testimony was "seriously erroneous" or "a miscarriage of justice." *ING Global*, 757 F.3d at 99. A new trial is not warranted on this basis.

### IV.  Plaintiff Has Not Shown an Instructional Error Warranting a New Trial.

Next plaintiff raises two related challenges to the portion of the jury charge which explained that his excessive force claim "relate[d] [only] to allegations of kicking or stomping" and "d[id] not relate to officers tackling plaintiff to the ground in connection with his arrest." 6/13/22 Tr. 580–81; *see* New Trial Mot. 16–18. Neither objection warrants a new trial.

First, plaintiff takes issue with the language of the instruction. Specifically, plaintiff contends that the Court erred by using the word "tackling" when evidence at trial instead showed that plaintiff had been "thrown to the ground." New Trial Mot. 17. But plaintiff failed to object to this instruction during the charge conference, *see* 6/10/22 Tr. 343–62, and thus cannot obtain relief on this ground without establishing plain error, *see* Fed. R. Civ. P. 51(d)(2). Plaintiff has not shown any plain error in the Court's instructions.

11

Plaintiff's second objection is that the Court erred in forbidding the jury from considering whether the officers used excessive force by throwing him to the ground. But this argument is simply an attempt to relitigate the Court's summary judgment decision. On summary judgment, the Court concluded as a matter of law that no reasonable jury could find that the officers used excessive force when they "picked [plaintiff] off the ground, and then . . . threw him to the ground," and that in any event, officers would have been entitled to qualified immunity for doing so. Summary Judgment Order 8–10. Plaintiff now argues that, contrary to the Court's conclusion at summary judgment, "[t]he issue of the reasonableness of throwing the Plaintiff to the ground was a matter to be left to [the] finder of fact." New Trial Mot. 19. But while plaintiff is free to challenge the partial grant of summary judgment on appeal, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" *Sequa*, 156 F.3d at 144; *see, e.g.*, *Radio Networks, LLC v. Baisden Enters., Inc.*, No. 14-CV-1860 (SAL), 2017 WL 6759943, at *6 (N.D. Tex. Dec. 29, 2017) (rejecting defendants' motion for a new trial based on asserted errors in a jury charge where defendants' "arguments hearken[ed] back to the court's summary judgment ruling" and merely "attempt[ed] to relitigate the issues decided by the court in [plaintiff's] favor"); *Sanchez v. Tangipahoa Par. Sheriff's Off.*, No. 08-CV-1227 (MVL), 2010 WL 4340333, at *1 (E.D. La. Oct. 21, 2010) (rejecting a Rule 59(e) motion where plaintiffs had "not provided any new evidence, but rather s[ought] to reargue their interpretation of evidence that was presented in connection with the motions for summary judgment").

### V. The Jury's Verdict Was Not Against the Weight of the Evidence.

Finally, plaintiff argues that a new trial is warranted because the jury's verdict was against the weight of the evidence presented at trial. *See* New Trial Mot. 19–21. A verdict "is against the weight of the evidence, for purposes of a Rule 59 motion, if and only if the verdict is seriously

12

erroneous or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). The verdict in this case does not qualify, because defendants presented more than enough evidence from which the jury could conclude that none of the defendants used excessive force against plaintiff. Defendant Johnston testified that plaintiff resisted arrest, that he never kicked or stomped on plaintiff, and that he did not see any other officer do so either. *See* 6/10/22 Tr. 456–59. And the robbery victim, Mr. Chateau, corroborated that version of events, testifying that he was able to see the entire arrest from inside a police car and that he never saw any officer kick, stomp, or otherwise strike the plaintiff. *See id.* at 389–91, 394.

In arguing to the contrary, plaintiff principally contends that jurors should have disbelieved defendant Johnston's testimony and credited the favorable testimony of plaintiff's mother. New Trial Mot. 19–21. But credibility calls are the province of the jury under all but the most unusual circumstances. *See DLC Mgmt. Corp.*, 163 F.3d at 134 ("A court should rarely disturb a jury's evaluation of a witness's credibility."). Here, in a case with little objective evidence on either side, the jury was well within its rights to credit the testimony of defendants' witnesses over plaintiff's. Because the verdict here was not "seriously erroneous or a miscarriage of justice," *Farrior*, 277 F.3d at 635, plaintiff is not entitled to a new trial on this theory.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a new trial is denied.

SO ORDERED.

                          /s/ Rachel Kovner
                          RACHEL P. KOVNER
                          United States District Judge

Dated:         February 6, 2023
               Brooklyn, New York